The PEOPLE of the State of Colorado,
Plaintiff–Appellant

v.

Samuel LINCOLN, Defendant–Appellee.

Nos. 07SA82, 07SA83.

Supreme Court of Colorado,
En Banc.

June 25, 2007.

Pete Hautzinger, District Attorney, Twenty-First Judicial District, Richard B. Tuttle, Assistant District Attorney, Grand Junction, Colorado, Attorneys for Plaintiff–Appellant.

Kathy Goudy, Carbondale, Colorado, Griff, Larson, Laiche & Brennan, Stephen Laiche, Grand Junction, Colorado, Samler and Whitson, P.C., Eric Samler, Denver, Colorado, Attorneys for Defendant–Appellee.

John W. Suthers, Attorney General, Daniel D. Domenico, Assistant Solicitor General, Catherine P. Adkisson, Assistant Solicitor General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Amicus Curiae State of Colorado.

Colorado District Attorneys Counsel, David J. Thomas, Executive Director, Denver, Colorado, Scott Storey, District Attorney, First Judicial District, Donna Skinner Reed, Chief Appellate District Attorney, Golden, Colorado, Attorneys for Amicus Curiae Colorado District Attorneys Counsel.

Office of Alternate Defense Counsel, Lindy Frolich, Denver, Colorado, Attorneys for Amicus Curiae Office of Alternate Defense Counsel.

Colorado Criminal Defense Bar, Pamela Dayton, Denver, Colorado, Attorneys for Amicus Curiae Colorado Criminal Defense Bar.

Justice HOBBS delivered the Opinion of the Court.

In this interlocutory appeal pursuant to sections 16–12–102(2) and 20–1–107, C.R.S. (2006), we review whether the trial court properly exercised its discretion when it disqualified two assistant district attorneys, Richard Tuttle and Tammy Eret, and the entire Mesa County District Attorney's Office from further participation in two pending cases against the defendant, Samuel Lincoln, after finding special circumstances. We conclude that the trial court had insufficient grounds to disqualify Tuttle, Eret, and the entire Mesa County District Attorney's Office.

Tuttle and Eret had previously represented three potential witnesses while in private practice on a variety of unrelated matters. Based on the possibility that they obtained exculpatory information during their representation of the witnesses, the trial court found that they were barred from revealing that information, which created an irresolvable ethical conflict in participating in the prosecution of Lincoln's cases. The trial court relied on the Colorado Rules of Professional Conduct to conclude that the prosecuting attorneys were placed "on the horns of [an] irresolvable [ethical] dilemma," which constituted special circumstances requiring disqualification. We disagree with the trial court's analysis and conclusion.

Because of the attenuated and unrelated nature of the prosecuting attorneys' prior representation, the mandatory obligation of prosecuting attorneys to disclose exculpatory information, the lack of a showing that Lincoln would likely not receive a fair trial, and the prosecuting attorneys' assertions that they did not have exculpatory information, we conclude that the trial court abused its discretion. We determine that no special circumstances exist in these cases that would warrant disqualification of Tuttle, Eret, and the Mesa County District Attorney's Office.

## I.

In two separate cases,[1] the Mesa County District Attorney's Office charged the defendant, Samuel Lincoln, with criminal attempt to commit first degree murder, first degree assault, and vehicular eluding. The first incident occurred on November 23, 2005, when Lincoln allegedly attempted to murder James Finnegan. Several days later, on December 1, 2005, Lincoln allegedly fired shots at two Mesa County Sheriff's deputies, Tanya Brechlin and Michael Miller. The information

---

1. The two pending cases against Lincoln are consolidated for purposes of this appeal only.

mation alleges that Lincoln fired at the deputies as they were attempting to pull over his car after a week long manhunt.

Two prosecutors assigned to these cases, Richard Tuttle and Tammy Eret, previously acted as principal shareholders in a private law firm, Tuttle, Eret and Rubenstein, P.C. ("TER"). Tuttle and Eret served as district attorneys in Mesa County until 2002 when they left to open the firm. The firm closed in December 2004 and Tuttle and Eret returned to the district attorney's office. Dan Rubenstein also acted as a principal shareholder in TER and returned to the Mesa County District Attorney's Office at the same time as Tuttle and Eret. Rubenstein was not assigned to prosecute Lincoln's pending cases, but he acts as a Chief Deputy District Attorney in Mesa County. The record is unclear about whether Rubenstein has any role connected with the prosecution of Lincoln's cases.

In the two pending cases against Lincoln, the prosecution endorsed over 200 witnesses. Three of the endorsed witnesses were previously represented by TER in unrelated matters. Sheriff's Deputy Michael Miller, the named victim in the second case, was represented by Eret in a contested domestic relations case, which concluded in 2004. The second witness, Corey Winkel, was represented by Eret in a 2002 felony marijuana distribution prosecution. TER was not fully paid for its legal services and turned the debt over to a collection agency in 2003. According to the record, the debt is still outstanding.

In addition, Winkel was prosecuted by Tuttle, after he returned to the district attorney's office, in 2006 for a felony accessory charge related to the first pending case against Lincoln involving Finnegan. The prosecution named Winkel as a witness based on his contact with Lincoln following the Finnegan shooting. The third witness, Robert Thorpe, and several members of his family were represented by TER on a variety of business and personal matters between 2002 and 2004. Thorpe's daughter was prosecuted by the Mesa County District Attorney's Office on an unrelated charge in 2005 after Tuttle and Eret returned to that office. Eret was involved in the review, charging, and oversight of the prosecution of Thorpe's daughter, but she did not personally prosecute the case. The prosecution named Thorpe as a witness in the pending cases against Lincoln based on his knowledge of incriminating statements made by a third party involved in both attempted murders.

Lincoln's attorneys moved to disqualify Tuttle, Eret, and the entire district attorney's office from prosecuting the pending cases against Lincoln. Tuttle, Eret, and the district attorney's office objected to the disqualification. After a hearing, the trial court found that, due to TER's prior representation of three endorsed witnesses, Tuttle and Eret might have exculpatory information concerning Lincoln's case and would, therefore, be prohibited by attorney-client confidentiality from revealing that information. Despite Tuttle's assertion during the hearing that neither he nor Eret possessed any exculpatory information, the trial court found that "something more than the testimony or assertions of the members of the District Attorney's Office" was necessary "to mitigate the 'special circumstances' evidenced by the facts of this case."

The court determined that Tuttle and Eret faced an irresolvable ethical dilemma. It reasoned that the rules of professional conduct prevented them from divulging exculpatory information gained in connection with their prior representation of the prosecution-endorsed witnesses, and from even saying whether or not they had exculpatory information:

> While they are obligated to disclose any and all potentially exculpatory information, *they are barred from not only divulging any exculpatory information* of which they have knowledge, possession, or control from their prior attorney-client relationships, but *they are also barred from divulging that they know of no exculpatory information related to their private attorney-client relationships* with Michael Miller, Corey Winkel, Robert Thorpe, or any other former TER clients found on the witness endorsements.

(Emphasis added).

The court also determined that, because the district attorney's office did not have an

adequate screening policy in place, the entire office must be disqualified. Relying on its inherent authority to protect the integrity of the court's "fact-finding process, to uphold the ethics of the legal profession, to ensure both the fairness and appearance of the proceedings, and to maintain the public's trust and confidence in the criminal justice system," the trial court concluded that Tuttle, Eret, and the Mesa County District Attorney's Office were disqualified from prosecuting the cases against Lincoln. The court appointed a special prosecutor.

On March 13, 2007, the prosecution filed an interlocutory appeal pursuant to sections 16–12–102(2) and 20–1–107(3), C.R.S. (2006), which create an affirmative right of interlocutory appeal to contest district attorney disqualification orders.

## II.

Because of the attenuated and unrelated nature of the prosecuting attorneys' prior representation, the mandatory obligation of prosecuting attorneys to disclose exculpatory information, the lack of a showing that Lincoln would likely not receive a fair trial, and the prosecuting attorneys' assertions that they did not have exculpatory information, we conclude that the trial court abused its discretion. We determine that no special circumstances exist in this case that would warrant disqualification of Tuttle, Eret, and the Mesa County District Attorney's Office.

First, to determine whether the trial court properly exercised its discretion when it disqualified the Mesa County District Attorney's Office, we discuss the applicable grounds for disqualification pursuant to section 20–1–107. Next we turn to an analysis of whether special circumstances existed in this case that would render it unlikely that Lincoln would receive a fair trial. In the context of determining whether special circumstances for disqualification existed, we consider a prosecutor's constitutional and statutory obligation to disclose exculpatory material as it relates to the rules of professional conduct governing attorney-client confidentiality and conflicts of interest.

## A.

### Standard of Review District Attorney Disqualification

We have previously addressed the disqualification of individual district attorneys and an entire district attorney's office. *See People ex rel. N.R.*, 139 P.3d 671, 674 (Colo.2006); *Fognani v. Young*, 115 P.3d 1268, 1271 (Colo. 2005); *People v. C.V.*, 64 P.3d 272, 274 (Colo. 2003); *People v. Palomo*, 31 P.3d 879, 880 (Colo.2001); *People ex rel. Sandstrom v. Dist. Court*, 884 P.2d 707, 710 (Colo.1994).

Colorado generally requires that its district attorneys prosecute criminal cases. Colo. Const. art. IV, § 1(1); Colo. Const. art. VI, § 13; § 20–1–102(1) & (3), C.R.S. (2006) (stating that the district attorney represents the people of the state of Colorado). Section 20–1–107 creates an exception to the general rule and vests a trial court with the discretion to disqualify a district attorney and appoint a special prosecutor under certain circumstances. *Palomo*, 31 P.3d at 882.

Prior to its amendment in 2002, section 20–1–107 provided for the disqualification of a district attorney "[i]f the district attorney is interested or has been employed as counsel in any case which it is his duty to prosecute or defend." § 20–1–107, C.R.S. (2001). The General Assembly amended the disqualification statute in 2002 to provide that "[a] district attorney may only be disqualified in a particular case ... upon a showing that the district attorney has a personal or financial interest or finds special circumstances that would render it unlikely that the defendant would receive a fair trial." § 20–1–107(2), C.R.S. (2006).

■ The disqualification statute is designed to ensure that district attorneys can perform their public duty as mandated by the Colorado Constitution. The legislative declaration in section 20–1–107(1) states that:

the office of the district attorney was created by the state constitution and the state constitution gives to the general assembly the exclusive authority to prescribe the duties of the office of the district attorney. The general assembly finds and declares that this section is necessary to protect the

independence of persons duly elected to the office of district attorney.

In accordance with the constitutional provisions and the legislature's stated intent, the statute authorizes disqualification only "when the district attorney has an interest in the litigation apart from his professional responsibility of upholding the law." *N.R.*, 139 P.3d at 676 (*citing People v. Dist. Court*, 189 Colo. 159, 162, 538 P.2d 887, 889 (1975)). In order to allow prosecutors to perform their professional duty to execute the laws of the State of Colorado, the statute narrowly enumerates specific circumstances where disqualification would be warranted.

In several recent cases, we analyzed the statutory language in the amended version of the disqualification statute and concluded that the legislature intended to specifically define the circumstances where disqualification is proper. *N.R.*, 139 P.3d at 674–76; *People v. Chavez*, 139 P.3d 649, 652–53 (Colo. 2006); *People ex rel. E.L.T.*, 139 P.3d 685, 687 (Colo.2006); *People v. Manzanares*, 139 P.3d 655, 658 (Colo.2006). Because the amended version of the statute specifically states that "[a] district attorney may *only* be disqualified" upon a showing of personal interest, financial interest, or special circumstances, we concluded that "in using the word '*only*' and defining with specificity the circumstances under which disqualification is proper, the amended version of section 20–1–107 eliminates 'appearance of impropriety' as a basis for disqualification." *N.R.*, 139 P.3d at 675 (emphasis added).

Accordingly, under the current version of the statute, disqualification is proper only when: (1) the district attorney requests his or her own disqualification; (2) the district attorney has either a personal or financial interest in the prosecution; or (3) special circumstances exist that would make it unlikely that the defendant would receive a fair trial. § 20–1–107(2); *N.R.*, 139 P.3d at 676. Because the first two situations do not exist in the present case, we now analyze whether special circumstances exist to warrant disqualification.

## B.

### Special Circumstances for Disqualification

The special circumstances provision of section 20–1–107(2) requires a showing by the party moving for the disqualification that facts exist rendering it unlikely that the defendant would receive a fair trial. Although the legislature did not define what constitutes special circumstances, several cases, decided both before and after the statutory amendment, discuss what type of circumstances would render a prosecution so unfair as to require the disqualification of the district attorney. *See N.R.*, 139 P.3d at 677 (*citing C.V.*, 64 P.3d at 275–76 (noting that the defendant must present sufficient evidence to support a conclusion that he or she will be denied a fair trial if the district attorney is not disqualified); *Wheeler v. Dist. Court*, 180 Colo. 275, 278–79, 504 P.2d 1094, 1096 (1973) (holding that the defendant seeking to disqualify the district attorney must establish facts sufficient for the trial court to reasonably conclude that the defendant will probably not receive a fair trial) ).[2]

In *Chavez*, we concluded that the special circumstances justifying disqualification exist when the prosecuting attorney had a previous attorney-client relationship with the defendant in a case that was substantially related to the case in which the defendant is currently being prosecuted. 139 P.3d at 653 (relying on two consolidated cases, *Farina v. Dist. Court, Osborn v. Dist. Court*, 619 P.2d 41, 48 (Colo.1980)).

In Lincoln's cases the trial court focused on what it deemed to be an irresolvable ethical dilemma requiring disqualification. We conclude that no such irresolvable dilemma exists.

## C.

### Exculpatory Information and Professional Obligations

Prosecutors have a constitutional and statutory obligation to disclose to the

---

**2.** A properly drafted screening policy is another factor relevant to the trial court's discretionary decision as to whether special circumstances exist that would warrant disqualification of an entire district attorney's office. *Chavez*, 139 P.3d at 654.

defense any material, exculpatory evidence that tends to negate the guilt of the accused. *Brady v. Maryland,* 373 U.S. 83, 86–87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). A prosecutor has a duty to disclose such evidence regardless of whether the accused requests disclosure; the prosecutor's duty of disclosure also encompasses impeachment evidence. *Strickler v. Greene,* 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Failure to disclose information helpful to the accused is a due process violation only if the information is material to either guilt or punishment. *Salazar v. People,* 870 P.2d 1215, 1220 (Colo.1994). The evidence is material only if there is a "reasonable probability[3] that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 1221.

The United States Supreme Court has enunciated several levels of standards to aid in determining whether the information is exculpatory for disclosure purposes: "(1) evidence which may be merely helpful to the defense; (2) evidence which raised a reasonable doubt as to defendant's guilt; (3) evidence which is of such a character as to create a substantial likelihood of reversal." *United States v. Agurs,* 427 U.S. 97, 114 n. 22, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

Part I(a)(2) of the Colorado Criminal Procedure Rule 16 and Colorado Rule of Professional Conduct 3.8(d) obligate a prosecutor to disclose to defense counsel and the court "any material or information within his possession or control which tends to negate the guilt of the accused ... except when the prosecutor is relieved of this responsibility by a protective order of the tribunal." *See also In the Matter of Attorney C,* 47 P.3d 1167, 1169–71 (Colo.2002) (discussing the prosecution's mandatory obligation to disclose exculpatory information).

■ A prosecutor's duty to disclose exculpatory information may involve information received from a prior client that normally would be protected by attorney-client confidentiality. *See* Colo. RPC 1.6 (governing attorney-client confidentiality and its exceptions). In relevant part, Rule 1.6(a) states that "[a] lawyer shall not reveal information relating to representation of a client unless the client consents after consultation." However, the comment to this rule states that an attorney may not disclose confidential information, unless authorized or required by other Rules of Professional Conduct or *other law.* Colo. RPC 1.6 cmt. (emphasis added).

Additionally, the relevant conflict of interest rule provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the *same or a substantially related matter* in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." Colo. RPC 1.9(a) (emphasis added). Prosecutors are subject to the conflict of interest requirements stated in Rule 1.9. Colo. RPC 1.11(d)(1) ("Except as law may otherwise expressly permit, a lawyer currently serving as a public officer or employee ... is subject to Rules 1.7 and 1.9").

The comment following Rule 1.9 indicates that the underlying issue in determining if a lawyer has a conflict of interest "is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." Matters are substantially related for the purpose of Rule 1.9(a) "if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." ABA Model Rules of Prof'l Conduct R. 1.9 cmt. 3. Similarly, the American Bar Association Criminal Justice Standard requires that a prosecutor who formerly represented a client in private practice should not use information obtained from that representation to the disadvantage of the former client, unless the rules of attorney-client confidentiality do not apply. ABA Criminal Justice Stds. 3–1.3(d).

*People v. Dist. Court,* 808 P.2d 831, 834 (Colo. 1991).

---

**3.** A reasonable probability is a probability sufficient to undermine confidence in the outcome.

The accused's due process right to a fair trial and the constitutional, statutory, and ethical rules require a prosecuting attorney, if she or he wishes to remain on the case, to disclose exculpatory information even if it was obtained from a prior representation. In this situation, a prosecuting attorney has several options. She or he may obtain consent from the prior client waiving attorney-client confidentiality and authorizing disclosure of the exculpatory information. If consent is not obtained, she or he may (1) disqualify from prosecuting the accused and be screened from the office's prosecution of the case or (2) proceed with the prosecution, disclose to the court that she or he has exculpatory information, and reveal the information to the defense upon order of the court. Colo. RPC 1.6 cmt.

A trial court can ask for and accept a prosecuting attorney's assurance that he or she has diligently reviewed the facts and circumstances of the prior representation and there is no exculpatory information required to be revealed by the constitution, statutes, and case law. This is so because, like all attorneys, the prosecuting attorney as an officer of the court must not lie or misrepresent facts to the court. Colo. RPC 3.3(a)(1) & (4); Colo. RPC 8.4; *In the Matter of Pautler*, 47 P.3d 1175, 1178–79 (Colo.2002). In addition, as a duty of office, a prosecutor, who wishes to continue prosecuting the case, must disclose to the court that he or she has exculpatory information and reveal that information if ordered to do so by the court.

### D.

### Application to this Case

We conclude that the record does not support the trial court's ruling that special circumstances exist in this case to disqualify Tuttle, Eret, and the entire Mesa County District Attorney's Office from prosecuting the cases against Lincoln.

First, no facts show that TER's prior representation of the three witnesses is substantially related to the pending prosecutions against Lincoln. The facts show that TER represented Miller, the alleged victim in the second pending case against Lincoln, and Thorpe in unrelated personal and business matters. Similarly, TER represented Winkel in an unrelated felony marijuana case.

Second, the trial court's disqualification of the entire district attorney's office and Tuttle and Eret individually is based on the trial court's supposition of an irresolvable ethical dilemma. It may be a dilemma, but it is not irresolvable. Contrary to the trial court's reasoning, it can ask for and receive assurance from a prosecuting attorney that she or he does not have exculpatory information that must be revealed to the accused.[4] If the prosecuting attorney has exculpatory information, she or he may (1) seek consent from the prior client to disclose it; (2) disqualify from the prosecution of the case and be screened from it; or (3) continue as a prosecuting attorney, if consent is refused by the prior client, disclose to the court that she or he has exculpatory information, and reveal that information to the defendant if ordered to do so by the court.

Thus, on remand, the Mesa County District Attorney's Office is not disqualified from prosecuting the case. If Tuttle and Eret do not disqualify themselves from the prosecution, the trial court may seek and rely upon assurances from them that, after diligently reviewing the facts and circumstances of the prior representation, there is no exculpatory information required to be revealed by the constitution, statutes, and cases. If there is exculpatory information, Tuttle and Eret may seek consent from their former clients waiving attorney-client confidentiality to reveal the exculpatory information without conflict. If they do not receive such consent, do not disqualify themselves, and continue as prosecuting attorneys, they must disclose to the court that they have exculpatory information they gained in the course of representing the prior client, and will reveal that information if ordered to do so by the court.

---

4. The trial court stated: "While they are obligated to disclose any and all potentially exculpatory information … *they are also barred from divulg-* *ing that they know of no exculpatory information* related to their private attorney-client relationships ...." (emphasis added).

On remand, in addition to assuring itself that Tuttle and Eret's role in the prosecution of these cases is clarified in accordance with the standards and procedures set forth in this opinion, the trial court should do the same with regard to Rubenstein. Rubenstein holds a high position in the district attorney's office. He did not testify or make statements in the disqualification proceeding before the trial court, and it is not clear from the record what role if any he may have in the prosecution of these cases or in supervising attorneys who are prosecuting these cases. Tuttle did say that Rubenstein had not looked closely at the list of endorsed witnesses to check for former clients.

Taking into account the standards and procedures set forth in this opinion, if Tuttle, Eret, and/or Rubenstein disqualify themselves, the district attorney's office is not disqualified from prosecuting these cases if it puts into place a screening policy that will adequately screen this person or persons from the office's prosecution of these cases. *See Chavez,* 139 P.3d at 654.

In sum, contrary to the trial court's assumption, we conclude that there is no "irresolvable ethical dilemma" justifying the trial court's disqualification order, and no facts in the record demonstrate that Lincoln will likely not receive a fair trial. The trial court abused its discretion in determining that special circumstances existed in this case under 20–1–107(2) that required the disqualification of the Mesa County District Attorney's Office, Tuttle, and Eret.

### III.

Accordingly, we set aside the trial court's disqualification order and appointment of a special prosecutor for these cases, and return this case for further proceedings consistent with this opinion.